J-S39013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ADOPTION OF A.G., A MINOR CHILD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  R.W. | No. 1786 WDA 2013 |

Appeal from the Order September 20, 2013
In the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-12-354

BEFORE:  BENDER, P.J.E., WECHT, J. and PLATT, J.*

MEMORANDUM BY BENDER, P.J.E.:               **FILED SEPTEMBER 04, 2014**

R.W. ("Mother") appeals from the order entered on September 20, 2013, that granted the petition filed by the Washington County Children and Youth Social Services Agency ("CYS") to involuntarily terminate her parental rights to her minor, female child, A.G. ("Child") (born in December of 2010) pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

On February 6, 2011, CYS first became involved with this family after CYS received a referral that Child was admitted to Children's Hospital with a left clavicle fracture, multiple acute rib fractures on her left side, multiple healing rib fractures on her right side, transverse fracture of her right femur,

_____

[1] On December 4, 2012, Child's father, T.G. ("Father"), signed a consent form, voluntarily relinquishing his parental rights to Child.  Father does not challenge the termination of his parental rights to Child, nor is he a party to this appeal.

*Retired Senior Judge assigned to the Superior Court.

multiple classic metaphyseal lesion ("CML") fractures of the right tibia, CML fractures of the left metatarsal foot, and failure to thrive.  Mother has a history of mental health issues, and has been involved in mental health treatment since she was an adolescent.  Mother had been a dependent child and the victim of sexual and physical abuse.  Mother's mental health history includes self-cutting, suicidal ideation and a history of hearing voices.

On February 6, 2011, as a result of the referral, CYS entered into a Voluntary Placement Agreement with Mother and Father that Child was removed from the care of Mother and Father on February 11, 2011.  Child was placed into CYS shelter care due to the serious injuries she had suffered after being assaulted by Father, and by Mother's failure to protect her.  Due to the serious injuries inflicted on the child, both Father and Mother were charged with criminal offenses.

On March 7, 2011, an Emergency Shelter Care order was entered extending the placement of Child's shelter care.  On March 22, 2011, at the time for the scheduled hearing before the Juvenile Hearing Master, Mother and Father entered into an agreement that Child would continue in CYS foster shelter care until further order of court.  Since then, Child has been in placement.  On April 12, 2011, Child was adjudicated as a dependent child.

As a result of the injuries inflicted to Child, Father was charged with Aggravated Assault, Endangering the Welfare of a Child, and Recklessly Endangering Another Person, to which he pled guilty on December 9, 2011.[2] For her role in Child's injuries, Mother was also charged with Endangering the Welfare of a Child, to which she entered a plea of guilty on February 13, 2012. Mother was sentenced to twenty-three months in the Intermediate Punishment program.

On March 16, 2012, CYS filed a petition to terminate Mother's parental rights. On August 22, 2012, a hearing was held on that petition. The trial court found that CYS did not establish by clear and convincing evidence for the termination of Mother's parent rights to Child.

On February 4, 2013, the agency re-filed a petition for involuntary termination of Mother's parental rights. On May 24, 2013, June 26, 2013, and September 3, 2013, hearings were held on that petition. At the hearing, CYS presented the testimony of Heather Miller, a parent educator for the Blair Foundation; Neil Rosenblum, Ph.D., a licensed psychiatrist; Lindsey Syster, a family resource specialist for Justice Works Youth Care; Puja Shroff, a therapist; Foster Mother; David Cincinnati, a CYS caseworker; Mother's paramour, R.V.; Mother's friend, K.G.; and Mother. On September

_____

[2] In exchange for his plea, Father received a sentence of twenty-two months' to forty-eight months' incarceration, followed by a period of twenty-four months' probation. At the time of the termination proceedings, Father was incarcerated in a State correctional institution.

20, 2013, the trial court entered the order terminating Mother's parental rights to Child pursuant to section 2511(a)(2), (5), (8), and (b) of the Adoption Act.

On November 4, 2013, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2) and (b).[3] In her brief on appeal, Mother raises two issues, as follows.

1. Did the trial court err in finding that competent evidence established the statutory grounds for termination of [Mother]'s parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5) and (8)?

2. Did the trial court err in finding that [C]hild's best interests and welfare were served by a termination of [Mother]'s parental rights pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief, at 4.

We review an appeal from the termination of parental rights with the following standard.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*,

_____

[3] On October 21, 2013, the trial court granted Mother's counsel's request to withdraw as counsel, and granted Mother fourteen days to appeal. On January 31, 2014, this Court granted Mother's motion for extension of time to file her brief, and ordered the record to be remanded to the trial court to insure that the record is complete.

- 4 -

608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010).  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  *Id.*; *R.I.S.*, [613 Pa. 371, 455,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)].  As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion.  *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003).  Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases.  We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents.  *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190.  Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.  *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.  *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus on section 2511(a)(2).

Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

- 6 -

23 Pa.C.S. § 2511.

We have stated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citations omitted).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."[].

> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

- 7 -

*In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1986) (quoting *In re: William L.*, 383 A.2d 1228, 1239 (Pa. 1978)).

*In re Adoption of S.P.*, 616 Pa. at 326-327, 47 A.3d at 827.

We find the following portion of the trial court's opinion relevant to our inquiry with regard to subsection 2511(a)(2).

> As set forth above, Mother was discharged unsuccessfully from the Blair Foundation's parenting program due to her inability to demonstrate the application of parenting skills. Mother was unable to apply the skills that she presumably learned, and she had to be prompted to have interaction with [C]hild. Although Mother did successfully complete Justice Works Youth Care "Nurturing Parenting Program" in May of 2013, the family resource specialist representing that provider testified that a parent's improvement, however slight, triggers closure of the program. The family resource specialist further testified that there were concerns over Mother's ability to parent on her own: that Mother was not able to apply the lessons that she had completed and that Mother did not demonstrate independent parenting. In the two years since [Child] was removed from Mother's care, Mother continues to demonstrate her incapacity as a parent.
>
> Mother has certainly had a reasonable time to remedy the conditions which led to [C]hild's removal, and clearly, there was no evidence that Mother could remedy those conditions if given additional time.
>
> Furthermore, it was apparent from the testimony that Mother continues to demonstrate poor decision making. At the time of the hearing, Mother was cohabitating with a gentlemen who was thirty years her senior, whom she had met three months before he moved in with her. Mother was also sharing her home with another couple whose children are in foster care with [CYS]. The father of those children is a registered sex offender, for conviction of a sex offense involving a minor. Although Mother claimed that the registered sex offender did not stay at her home every day, she admitted that he sleeps there, and that he changed his address to the address of Mother's residence.

- 8 -

Mother further acknowledged during her testimony that she continues to be unable to accept the nature and cause of [Child]'s injuries. Mother harbor[s] the unreasonable belief that [C]hild suffered the fractures to her rib cage at birth, that she "shot out and the nurse caught her." Mother also stated that she had "learned how to be stern with [CYS] when asked if she had the ability to keep [C]hild safe and protect her from harm, Mother's only response was "I protect her with my soul."

Trial Court Opinion, 12/27/13, at 11-12. The trial court found clear and convincing evidence in the record that the repeated and continued incapacity, abuse, neglect or refusal of the Mother had caused Child to be without essential parental care, control or subsistence necessary for her physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the Mother. *Id.* at 12.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340. The evidence showed that "Mother does not have the ability to protect [C]hild and maintain a safe environment for [C]hild, and it is beyond Mother's ability to even establish a parental relationship with [C]hild." Trial Court Opinion, 12/27/13, at 12. The evidence also demonstrated that Mother's continued incapacity, abuse,

neglect or refusal to parent could not or would not be remedied, despite CYS's offering of reasonable efforts to assist in her reunification with Child.

Mother's argument regarding section 2511(a)(2) essentially seeks for this Court to make credibility and weight determinations different from those of the trial court. While Mother may claim to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re Adoption of S.P.*, 616 Pa. at 325-326, 47 A.3d at 826-827. Accordingly, we find that the trial court's determinations regarding section 2511(a)(2) are supported by sufficient, competent evidence in the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b)

are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*See also In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Mother argues that she has some bond with Child and that Mother was willing to do anything necessary for return of Child. *See* Mother's Brief, at 20.

The trial court found as follows:

> Finally, with respect to Mother's claim that it was an abuse of discretion for the Trial Court to find that termination would best serve the needs and welfare of the child, the Court submits that the record overwhelmingly supported this conclusion. [Child] suffered horrific injuries at the hands of her Father and Mother. Mother failed to recognize the hazardous environment her child was in, failed to protect [C]hild, and continues to have difficulty accepting the cause and nature of [C]hild's injuries. Mother

does not have the present ability to parent independently or to provide a safe home for [C]hild. Mother has difficulty making decisions and makes inappropriate decisions which place herself and [C]hild in danger. At the time of the termination proceedings, Mother had allowed a registered sex offender to reside in her home.

Trial Court Opinion, 12/27/13, at 12-13.

Further, the trial court found that there is no bond between Child and Mother. *Id.* at 9.

[C]hild displays anxiety in response to her visits with Mother, and as a result suffers from hives after the visits. Mother never established a primary attachment with [C]hild. [C]hild clearly demonstrates a lack of emotional attachment with Mother. Mother does not display affection with the child. Mother has no bond or meaningful relationship with the [C]hild but, rather, only a peripheral relationship with [C]hild. There was no evidence of any significant relationship between Mother and [C]hild and no evidence presented of any adverse consequences should this relationship be terminated. On the contrary, the testimony unequivocally demonstrated that the termination of Mother's peripheral relationship with [C]hild would not be detrimental to [C]hild.

Trial Court Opinion, 12/27/13, at 13. This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

Additionally, as part of its bonding analysis, the trial court appropriately examined Child's relationship with Foster Parents. *See In re: T.S.M.*, ___ Pa. at ___, 71 A.3d at 267-268 (stating that existence of a bond attachment of a child to a parent will not necessarily result in the denial of a

termination petition, and the court must consider whether the child has a bond with the foster parents). The trial court found, as follows:

> [C]hild has a strong primary attachment with her foster mother, who is [C]hild's pre-adoptive resource. Termination of [C]hild's relationship with her foster mother, with whom she is thriving, would be traumatic and contrary to [C]hild's best interests. The degree of emotional trauma which [Child] would experience if removed from her current placement would be considerable and the risk of regression very high. [Child]'s emotional security would be considerably undermined if further reunification efforts were pursued.

Trial Court Opinion, 12/27/13, at 13-14.

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Mother, we conclude that the trial court did not abuse its discretion as to section 2511(b). ***See In re Adoption of S.P.***, 616 Pa. at 325-26, 47 A.3d at 826-27. Accordingly, we affirm the order terminating Mother's parental rights to Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2014

- 13 -